I think I'm the shortest lawyer here. Good afternoon. I represent Michelle Adams. She's the plaintiff appellant in this matter, and the case is based on age discrimination. First, I'd like to point out there's a very different standard in the federal law for age discrimination as there is in the New York City human rights law. In the federal law, you have to prove but for causation in order to prevail on an age discrimination case. But in the New York City human rights law, it's a much more liberal standard, much more friendly, shall we say, to plaintiffs. You just have to prove that age is a motivating factor, and we have many pieces of evidence here that there's a motivating factor of her age being considered. First of all, she's – well, this is going to digress a little bit, but she's replaced by people 18 to 48. But if we don't find a federal, that isn't the appropriate thing with respect to the state to dismiss that without prejudice and not decide it if it's a hard question. It's an easy question. We can decide it. But if you're making a distinction between what might happen federally and we decide against you federally, what we do all the time is simply dismiss the state case without prejudice and let you argue it out to the people who know state law better than we do. We originally brought the case in state court, Your Honor, and I've had this exact issue in front of you. In fact, you were on the panel and you did exactly what you just said. That's exactly what was done. I think we should prevail on the federal law as well because I think that they were aware of the fact that she was having problems with Elvira. I can't pronounce her last name. It's something like Balotnikova. Yeah, but this is a suit against the company, and the company fired both the person whom she was having trouble with because it said that the remarks, which, okay, were ageist enough so that they fired that person. And they fired your client because she got into a fight with them. Now, why does that support an argument that the company was violating age discrimination at a federal level? I didn't mean to cut you off. That by itself does not. But the fact that they were aware that she was having problems with Elvira and they did nothing to rectify it. What does that have to do with age? What's that? What does that have to do with age? Because the problems with her were based on her age. There were statements made about her being older than her mother. There were several statements made, and they're more than petty slights and inconveniences. I know that's a city law standard. Are you attributing those comments to Equinox? I'm saying that Equinox was aware of them and took no action. Who else is to take action about it over an employee who's making ageist discriminatory remarks but the company? Isn't the company responsible for the remarks? Did she complain to the company or did she just about age or was she just saying I'm having trouble with this person? Well, she certainly complained to the company. And it's indicated in Diaz's testimony that they took no corrective action. And there is a question of fact. What did she say to the company? Well, we have e-mails to the company on November 29th, 2017 that she's being discriminated against. That's earlier than the incident with Elvira. Sorry? That's earlier than the incident with Elvira. Elvira comes in later. Elvira comes in approximately a month before she gets fired. But they are aware that statements were made in front of a manager, Sangolo, about age, and they did nothing about it. And Diaz, who is the big manager there, says no corrective action was taken. Now, isn't the company responsible if they leave somebody in place who's discriminating against somebody, who's treating somebody badly and they fail to act on it? And that's really the argument of the vote. But this person wasn't a supervisor. It was a coworker with considerably less seniority, right? I agree with you 100 percent. That is correct. But the point is that the supervisors knew that this was going on, continued to make her work with Elvira, and did nothing to alleviate the situation. As Diaz admits, there was no corrective action taken. And I have that quote in there. Shouldn't the company take action if they know that another employee is creating a hostile work environment for somebody? I mean, that's really the crux of the matter, at least in the federal court. Okay. So your strongest evidence is the coworker's comments and then the fact that they replaced your client with somebody younger. Is that it? That's not the entirety, but that's a lot of it, yeah. I mean, but it's more than that. Again, I don't want to be redundant, but they knew what was happening with Elvira and my client, and they took no action. You say they took no action. Are you saying that the failure to act after these two remarks about mother and so on is enough to create a hostile environment so that even if no adverse action was taken, your client has assumed? Is it enough so that that is actual discrimination so that your client has assumed against the company? Or are you saying that those things occurred, they learned or should have known and did something that was adverse action? Because I have trouble finding those things. I have trouble finding anything until this explosion in which both people were fired. Well, juxtapose it with the fact that they left her interacting with this woman who was acting badly towards her. That's enough to be hostile work environment. It certainly supports it, and it certainly explains her reaction to her. When the incident does occur on, I think it's March 23rd, 2018. Yeah. It does explain it. If they had separated them, the incident wouldn't have happened. She had no history with them. She had no negative history, and she'd been complaining about age discrimination. She put in a complaint, I believe, November 24th, 2017, not pro se. She had a lawyer at the time. She made a complaint about age discrimination. She was making them continually aware that she felt she was being discriminated against. There's a good email on November 29th, 2017 about it. I would like to discuss the people replacing her, if I may. Now, my adversary cites Delaney. Delaney is a case that says, well, the fact that a person was replaced alone by itself by people who are much younger. Let's not necessarily make out an age discrimination case. But Hoskins, Delaney does mention also that it's alone, if it's the only thing, just replaced by younger people. There's nothing. But Hoskins, which is a state court case that discusses New York City human rights laws, is much more vociferous about it. And in Hoskins, the court discusses the fact that there is an inference of discrimination via the fact that a person is replaced by people younger. And my adversary, I'm sure, was an innocent mistake. But they seem to allege that only half the people she was training were replaced by younger people. That's not correct. All the people who were left are equinox, who she had trained were 18 or were trained in the future by people who were 18 to 40 years younger than her. If you juxtapose this with her complaints, her frequent complaints about discrimination, you juxtapose it with the incident with Elvira. And the Keats incident, by the way, which I wish I had discussed in more detail, but I did raise it in my brief. If you look at the appendix from I believe it's 167 to 174, you'll see that's a much more serious incident than the defendant appellees make it out to be. She believes it's an intentional incident. There's a lot written about it. And they cherry pick a statement, you know, basically like it's accidental. No, that's not accidental. If you read that part, I see you smiling around. If you read that part of the appendix, I think it's 167 to 174, you'll see that it is there. It's a pretty nasty little situation that she has with her. And again, they do nothing. She's there the day she leaves. She's still there. Now, when she leaves- Counsel, you're over time. Would you like to use your rebuttal time now or save it? I think I want to hear what Mr. Blumeni has to say. Okay. Thank you. Let's hear from Mr. Blumeni then. Good morning, Your Honors. My name is Jared Blumeni here on behalf of the appellees. There is not a shred of evidence of any age discrimination on the part of Equinox in this case. That is exactly where Judge Cronin came down throughout his decision. He did not find any age-related motivation for any of Equinox's actions, and frankly, there wasn't any. Equinox hired plaintiff when she was 40 years old. Equinox rehired plaintiff when she was 53 years old. Plaintiff's entire 21-year career at Equinox occurred when she was over the age of 40. There was no wrongful termination here. Equinox terminated plaintiff's employment because she admittedly threatened and cursed at her co-worker in front of numerous employees. The plaintiff herself characterized her conduct as an outburst. That witnesses pulled Elvira away because they thought that the plaintiff was going to physically attack her. This is unacceptable workplace behavior, and Equinox terminated plaintiff's employment as a result. It had nothing to do with age. There's no evidence in this record that this decision had anything to do with age. They also terminated Elvira's employment, who was only 30 years old at the time. It matters not that Elvira may have insulted plaintiff just prior to plaintiff's outburst. Even if that were true, Judge, even if plaintiff was triggered by Elvira's conduct, that does not, as a matter of law, excuse plaintiff's conduct. Yeah, but their argument is that the previous comments by Elvira was enough to be hostile and that your client should have done something about it. A few things. And that those comments were age-stubborn. They were close. A few things on that, Judge. And the idea that Equinox did nothing is just unequivocally false. There is evidence in the record that as soon as Equinox caught wind that Elvira said something to plaintiff a week prior to the outburst, they gave her a severe reprimand. They told her, if you say one more thing to her, you're going to be fired. Most employees would take heed of such a warning. I know I would. When they found out that she said another vaguely age-related comment to her another week later, they fired her on the spot. That is absolutely appropriate under the circumstances. How about the fact that your friend raises that she was replaced, Ms. Adams was replaced by younger trainers? Well, the fact of the matter is she wasn't replaced with any younger trainers. Equinox simply took those clients that remained members of Equinox, because some of Plaintiff's clients went to continue training with Plaintiff, and redistributed them amongst its employees whose ages at the time ranged from 22 to 43 years old. The law says that an employer's decision to distribute a former employee's work among younger employees, whether they're new hires, whether they're existing employees, does not in itself bespeak discrimination. Judge Cronin said it perfectly. If an employer could not even distribute a former employee's work among younger employees, the employer would, quote, be forced to either hire an older replacement, leave the employee's former work undone, or spread that work among only those retained staff members older than the Plaintiff, simply to avoid raising an inference of discrimination. So you are arguing that there is so little age here that even under the easier city and state, we should affirm dismissal with prejudice rather than just dismiss the state claims without prejudice, if we agree with you about the federal law. Absolutely, Judge. There is an absence of evidence here. We're well aware of the standard of the New York City Human Rights Law, motivated even in part. We understand that's more liberal than the federal standard, but there's no evidence here. And Judge Cronin said that throughout his decision. It's the absence of evidence. We're not deciding whether certain conduct rose to a certain level. We're saying there was no conduct at all. And that's the point why even the New York City Human Rights Law claims themselves, the dismissal of them, that is, should be affirmed by this court. With respect to Keatsa, that's the other individual to whom Plaintiff seeks to compare herself, a few things on that. The Plaintiff did, in fact, admit under oath that she doesn't know whether Keatsa intentionally threw a barbell at her. I deposed the Plaintiff on that matter myself. Video footage confirmed that Keatsa, who was using a very heavy barbell, simply lost control of the barbell in the Plaintiff's vicinity. That is completely different than Plaintiff's admitted intentionally threatening and combative behavior towards Elvira. So Keatsa's not even a proper comparator as a matter of law here. And to my adversary's point that, again, Equinox did nothing, that's false. The Plaintiff made a complaint. Keatsa threw a barbell at me. There was a full-length HR investigation. They looked at video surveillance. And they said, we understand what you're saying, but that's just not true. So the idea that my adversary said twice that Equinox did nothing, Equinox did nothing, false on both counts. And there's evidence in the record suggesting that they acted appropriately and promptly. With respect to the Plaintiff's allegations of hostile work environment relating to her mentoring contracts, her pay, her personal training leads, all of that has nothing whatsoever to do with age. Again, Judge Cronin said, the absence of evidence of treatment for a discriminatory reason extends not only to Plaintiff's termination, but to the mentoring program, the generation of leads, the pay rates. For example, Plaintiff asserts that she was underpaid. Plaintiff was the highest paid trainer at the club. Even trainers at her level, she had session rates ranging from $19 to $24 more per session than every other trainer. Joe Matarazzo, Senior Vice President of the company, testified on the road that Plaintiff was the highest paid personal trainer at that club. With respect to the leads, Plaintiff says that she wasn't given sufficient leads. The evidence in the record shows that she was given more leads than every other personal trainer at her level. But even if she wasn't, even if she was given the same leads or some less leads than other trainers, this has nothing to do with her age. Again, her entire career was spent at the company in a protected age category. If the Court has any questions, I'd be happy to field them. Thank you, Counsel. Thank you. We'll hear rebuttal. Now, I want to address the highest rate of pay. Yes, she had the highest rate of pay based on her age. And I understand that firing somebody because they have a highest rate of pay doesn't assume that there's age discrimination. But she only had 20 clients. They say they were giving her more leads than anyone else. They were giving her cold leads or she would have had clients. That's why she was continually complaining. So that's what they were doing to her with that. And the cold leads are talked about in the papers and the fact that they actually steered a client away from her at one point. If she's getting more leads than anybody, why is she sitting there in that situation where she only has 20 clients? And these people don't come in every day, each one of her clients. She wasn't able to harvest a business. She wasn't able to keep her business going because they weren't giving her viable leads. And again, although it's a small point, Nancy Johnson said she wanted to train with her and they told her she was too busy. Too busy when she was complaining she didn't have enough clients. There's an inference there that they wanted her to fail. And the entire case is based around the fact that there's an inference they wanted her out. She was older. They wanted her only to mentor. They were looking for an excuse to get rid of her. They left her with Elvira when they knew what the situation was. They did nothing to Keetsa over the incident. And I disagree with the analysis of it. And please, again, read 167 to 174. And they finally got their excuse. After many years at the place, having no problems, being an incredible trainer, an enormously successful athlete, even her 60s, they wanted her gone. She didn't fit the image. And they found a way to do it. Thank you. Thank you both. Thank you, counsel. Thank you both. Thank you.